IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ARIC STUTLER,

           Plaintiff,

v.                                    CIVIL ACTION NO.   2:25-cv-00469

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION,
et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Correctional Officer Devon Toppings' Motion to Dismiss Plaintiff's Complaint* (Document 4), the *Memorandum of Law in Support of Defendant Correctional Officer Devon Toppings' Motion to Dismiss Plaintiff's Complaint* (Document 5), *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss Plaintiff's Complaint* (Document 6), the *Memorandum of Law in Support of Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 7), *Defendants Timothy Tibbs, Michael Costello, and Correctional Officer David McBrayer's Motion to Dismiss* (Document 8), *Defendants Timothy Tibbs, Michael Costello, and Correctional Officer David McBrayer's Joinder in the Memorandum of Law in Support of Defendant WVDCR's Motion to Dismiss* (Document 9), the *Plaintiff's Memorandum Response to Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss and Defendant Costello, McBrayer, and Tibbs' Motion to Dismiss by Joinder* (Document 10), *Plaintiff Aric Stutler's*

*Memorandum in Opposition to Defendant Devon Toppings' Motion to Dismiss* (Document 11), the *Reply in Support of Defendant Correctional Officer Devon Toppings' Motion to Dismiss Plaintiff's Complaint* (Document 12), and *the Reply in Support of Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss* (Document 13), as well as the Complaint (Document 1-1). For the reasons stated herein, the Court finds that Defendant Toppings' and Defendants Tibbs, Costello, and McBrayer's motions to dismiss should be denied, and Defendant WVDCR's motion to dismiss should be granted.

## FACTUAL ALLEGATIONS

The Plaintiff, Aric Stutler, initiated this action in the Circuit Court of Kanawha County, West Virginia, on or about February 20, 2025. He named as Defendants West Virginia Division of Corrections and Rehabilitation (WVDCR), Lt. Timothy Tibbs, Michael Costello, Correctional Officer Devon Toppings, and Correctional Officer David McBrayer. Mr. Stutler was incarcerated at the North Central Regional Jail (NCRJ) during the events at issue. WVDCR is responsible for overseeing the jails and correctional facilities in West Virginia. Defendants Lt. Tibbs, Costello, Toppings, and McBrayer were employed as correctional officers at NCRJ. The Defendants removed the matter to federal court on July 28, 2025.

On or about February 23, 2023, Mr. Stutler requested the medication he had previously been receiving at Central Regional Jail. A nurse told him to shut up and an argument ensued. Lt. Tibbs threatened Mr. Stutler for arguing with the nurse and directed transport officers to bring Mr. Stutler to him once Mr. Stutler returned from court. Upon his return to NCRJ, Lt. Tibbs and Officer McBrayer were waiting for Mr. Stutler, and he was informed by Lt. Tibbs that he was

2

being placed in the hole.   Mr. Stutler was handcuffed and shackled with a belly chain and taken to the shower by Defendants Tibbs and McBrayer.

At the shower, Mr. Stutler's handcuffs were removed but he was still shackled, preventing him from removing his pants and fully stripping out.   Defendant Toppings entered the room and screamed at Mr. Stutler to strip out.   While trying to explain that he was still shackled, Mr. Stutler was sprayed, without warning, in the face with OC spray by Defendant Toppings.   Defendants Tibbs, Toppings, and McBrayer then entered the shower and began to kick and beat Mr. Stutler.  He was taken to the ground, and Defendant Toppings sprayed Mr. Stutler again while he was screaming for help.   Mr. Stutler's shackles and pants were removed by the Defendants, and Defendant Toppings sprayed Mr. Stutler in his genitals while he was held down by the other Defendants.

After being handcuffed and shackled by Defendant Tibbs, Mr. Stutler was placed in a cell. Mr. Stutler was not decontaminated prior to being placed in the cell and begged for assistance because he was burning and struggling to breathe.   Mr. Stutler eventually awoke to Defendant Costello hitting him in the face while telling him that there was nothing wrong with him.   Mr. Stutler was not properly decontaminated for a number of days despite being sprayed multiple times.

Mr. Stutler was not resisting and not a threat to himself, the Defendants, or anyone else when he was sprayed and beaten.   As a result of being sprayed and beaten, Mr. Stutler suffered serious physical and emotional pain. Defendants Tibbs and Costello have a history of using excessive and unnecessary force on inmates and have been involved in using excessive force against at least dozens of inmates while employed as correctional officers at NCRJ.

The Complaint contains the following counts: Count I – Outrageous Conduct; Count II – Violation of 42 U.S.C. § 1983; and Count III – Vicarious Liability.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the

4

assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendants separately presented arguments for dismissal based on failure to exhaust administrative remedies, qualified immunity and lack of vicarious liability. Where legal arguments of multiple defendants overlap, the Court has considered them jointly. As required for 12(b)(6) analysis, the Court has accepted the factual allegations to be true and has drawn all reasonable inferences from the facts in the Plaintiff's favor.

## A. Exhaustion of Administrative Remedies

The Defendants argue that the Plaintiff failed to exhaust his administrative remedies. Specifically, the Defendants argue that the Plaintiff failed to follow proper grievance procedures. To support their argument, the Defendants have attached a copy of the procedures for inmate grievances and two sworn affidavits from a WVDCR prison official indicating that a search of the WVDCR grievance system showed that no grievance was filed by the Plaintiff during the 2023 calendar year.

The Plaintiff argues that he exhausted all administrative remedies. Specifically, the Plaintiff argues that he has exhausted all available remedies because he had been denied the opportunity to file a grievance. The Plaintiff further argues that the Defendants are unable to meet their burden of showing that he failed to exhaust his administrative remedies at this stage of litigation because he has pled that he did so, and such factual allegations must be accepted as true.

Under the Prison Litigation Reform Act (PLRA), a prison inmate is prohibited from bringing a Section 1983 action in federal court "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prison inmate is entitled to bring suit in federal court only if the inmate has "utilized all available remedies 'in accordance with the applicable procedural rules.'" *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of raising and proving. *Curtis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) (citing *Jones v. Block*, 549 U.S. 199, 216 (2007)). "[A] prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the face of the complaint.'" *Id.* (quoting *Jones*, 549 U.S. at 216); *see also Leichling v. Honeywell Int'l,*

6

*Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016) ("An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail*.*").

The Fourth Circuit in *Germain* declined to affirm a dismissal at the pleadings stage when Germain pled that he had exhausted all administrative remedies, even though the defendants submitted affidavits indicating otherwise, explaining that it was required to accept Germain's factual allegations as true. *Germain v. Shearin*, 725 Fed.Appx. 225, 226-27 (4th Cir. 2018). As in *Germain*, the Plaintiff here has stated in his complaint that he has exhausted all administrative remedies. Because this Court is bound to accept all factual allegations in the Plaintiff's complaint as true, the Defendants have not met their burden of showing that the Plaintiff failed to exhaust his administrative remedies.[1] In addition, because the Plaintiff has argued that he has been denied the opportunity to file a grievance and, therefore, exhausted all available administrative remedies, it would be premature for this Court to grant the Defendants' motion to dismiss on this basis at this stage of the proceedings. *See Curtis*, 851 F.3d at 362 ("It may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."). Accordingly, the Defendants' motions to dismiss for failure to exhaust administrative remedies must be denied.

### B. Qualified Immunity

Defendant Toppings argues that he is entitled to qualified immunity. He argues that the Plaintiff failed to establish that he violated the Plaintiff's constitutional or statutory rights.

---

1 As the Fourth Circuit noted in a footnote in *Germain*, this would not preclude the possibility of the Defendants prevailing on a motion for summary judgment as it relates to the Plaintiff's exhaustion of administrative remedies claim. *Germain*, 725 Fed.Appx at 227 n.2.

Specifically, he contends that he was justified in deploying OC spray against the Plaintiff because of the Plaintiff's failure to comply with orders relating to an unclothed body search.

The Plaintiff argues that Defendant Toppings is not entitled to qualified immunity as it pertains to both his Section 1983 claim and his outrageous conduct claim. In addition, he argues that it was clearly established that the extensive use of chemical agents and the unjustified beating of a prison inmate constituted excessive force at the time of the incident. The Plaintiff further argues that he did not refuse the Defendants' orders, but rather, as alleged in his complaint, he was unable to comply with the request that was given.

*(1) 42 U.S.C.§ 1983*

When determining whether a defendant is entitled to qualified immunity for an excessive force claim under 42 U.S.C. § 1983, courts "examine (1) whether the facts illustrate that [the defendant] violated [the plaintiff's] constitutional right to be free from excessive force, and (2) if so, whether [the defendant's] conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013).

Beginning with the first prong, the Plaintiff has alleged that Defendant Toppings, along with the other Defendant correctional officers, violated his Eighth Amendment rights. "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). The objective component looks at "whether the force applied was sufficiently serious to establish a cause of action." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). Force is sufficiently serious if it is "something more than 'de minimis' force." *Brooks*, 924 F.3d at 112. (quoting *Hudson v.*

*McMillian*, 503 U.S. 1, 10 (1992)).  Extensive use of pepper spray is sufficient to constitute something more than de minimis force.  See *Iko v. Shreve*, 535 F.3d 225, 238-39 (4th Cir. 2008).

The subjective component asks whether an officer "acted with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).  Under this standard, "[t]he state of mind required. . . is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).  Whether an inmate can establish wantonness "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Jones*, 984 F.3d at 302 (quoting *Whitley*, 475 U.S. at 320-21).  The factors relevant to whether an officer applied force in "good faith" or with an intent to cause harm are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321).  Correctional officers apply force with intent to harm "when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct." *Jones*, 984 F.3d at 302 (quoting *Brooks*, 924 F.3d at 113).  "[T]he use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of such an impermissible motive." *Id.* (quoting *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017).

The Plaintiff alleged that Defendant Toppings, without warning, sprayed him with OC spray while he was trying to explain why he was unable to remove his pants, again after he was taken to the ground, and in his genitals after his pants were removed. (Compl. at ¶ 8.)  The Plaintiff

9

further alleged that Defendant Toppings, along with the other correctional officer Defendants, entered the shower and began to kick and beat him. (*Id.*) The Plaintiff states that during the course of this incident, he was not resisting and "not a threat to himself, the Defendants, or anyone else at the time he was sprayed or beaten." (*Id.* at ¶ 8, 10.) If proven, these factual allegations are sufficient to support a finding that Defendant Toppings violated the Plaintiff's Eighth Amendment rights by unjustifiably using excessive force against him while he was restrained, compliant, and posed no threat.

Thus, assuming the Plaintiff's factual allegations to be true, they are sufficient to establish both the objective and subjective components of an Eighth Amendment claim. The alleged facts are sufficient to establish the objective component because they demonstrate extensive use of OC spray and beatings by Defendant Toppings, both of which constitute more than de minimis force. The Plaintiff's factual allegations also satisfy the subjective component because he alleged that he was not resisting and was not a threat when Defendant Toppings sprayed him several times with OC spray and beat him. It can, therefore, be reasonably inferred from the allegations that Defendant Toppings sprayed and beat the Plaintiff maliciously to cause harm and punish him for perceived disrespect, rather than in a good faith effort to ensure compliance.

Having found that the Plaintiff has properly alleged an Eighth Amendment violation, the Court now addresses the second prong to determine whether Defendant Toppings' "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Hill*, 727 F.3d at 321. A correctional officer will be entitled to qualified immunity only if he can demonstrate that the constitutional right alleged to have been violated was not "clearly established." *Iko*, 535 F.3d at 233, 238. A constitutional right is "clearly established" if

10

preexisting law "gave the officials 'fair warning' that their conduct was unconstitutional." *Id.* at 238 (quoting *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)). It is clearly established that "inmates have the 'the right to be free from' the 'malicious' infliction of pain." *Brooks*, 924 F.3d at 119 (quoting *Thompson*, 878 F.3d at 102). "The unjustified striking or beating of a prisoner by police or correctional officials constitutes cruel and unusual punishment which is actionable under 42 U.S.C. § 1983." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Defendant Toppings, relying on *Anderson*, argues that it was not clearly established that his use of OC spray, in light of the Plaintiff's failure to comply, constituted a constitutional violation. Specifically, he contends that his use of OC spray is similar to the officer's use of a "mandibular angle pressure point technique" against a noncompliant, restrained suspect in *Anderson*, which the Fourth Circuit determined did not "run[] 'afoul of clearly established law.'" *Anderson v. Ferguson*, 2025 WL 2170729, at *5. However, while it was determined that such a technique was not a clearly established violation, the Fourth Circuit has previously determined that it is clearly established that the use of "chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain" constitutes an Eighth Amendment violation. *Contrast Anderson*, 2025 WL 2170729, at *5, *with Iko*, 535 F.3d at 240. In *Iko*, a correctional officer deployed several bursts of pepper spray against an inmate while attempting to extract him from his cell. *Id.* at 931-32. The court determined that while the correctional officer's initial burst might have been warranted since the inmate failed to initially comply, the subsequent bursts were not because the inmate attempted to comply and was not otherwise violent or confrontational. *Id.* at 239-40.

11

The law surrounding the Eighth Amendment violations alleged in the Plaintiff's complaint is clearly established. Even if the Court accepted Defendant Toppings' disputed factual assertion that he reasonably believed that the Plaintiff was noncompliant, the Plaintiff alleges that Defendant Toppings continued to use force against the Plaintiff well beyond any perceived non-compliance. As previously mentioned, the Plaintiff alleged that Defendant Toppings deployed several bursts of OC spray against him although he was not resisting or a threat. These facts are similar to those found in *Iko*, (decided years before the events presented here) and therefore, Defendant Toppings had fair warning that his use of OC spray constituted an Eighth Amendment violation. In addition, Defendant Toppings clearly had fair warning that his beating of the Plaintiff in the context alleged constituted an Eighth Amendment violation. Defendant Toppings is, therefore, not entitled to qualified immunity as it pertains to the Plaintiff's Section 1983 claim.

*(2) Outrageous Conduct*

The West Virginia Supreme Court of Appeals applies the federal standard for qualified immunity. *See W. Virginia Div. of Corr. & Rehab. v. Robbins*, 889 S.E.2d 88, 97 (W. Va. 2023) ("West Virginia's qualified immunity jurisprudence mirrors federal law."). As a result, the Court's qualified immunity analysis, discussed above, is applicable to the Plaintiff's outrageous conduct claim and Defendant Toppings is not entitled to qualified immunity.

C. *State Immunity from Vicarious Liability*

Defendant WVDCR argues that the sole claim against it, vicarious liability, is not a separate claim. In addition, Defendant WVDCR argues that it cannot be held vicariously liable for the intentional torts of its employees because such intentional acts do not fall within the scope of employment and argues that it is immune from vicarious liability for essentially the same reason.

12

The Plaintiff argues Defendant WVDCR can be held vicariously liable for the Defendant correctional officers' alleged outrageous conduct. The Plaintiff contends that he properly pled and asserted that the Defendant correctional officers' conduct was within the scope of their authority and for Defendant WVDCR's benefit. He relies on the decision by the West Virginia Supreme Court of Appeals, *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675 (W. Va. Mar. 31, 2023), which involved the use of OC spray and a restraint chair against an inmate. The Plaintiff further argues that Defendant WVDCR is not entitled to qualified immunity because the Defendant correctional officers' conduct was within the scope of employment but constituted a violation of clearly established law.

The West Virginia Supreme Court of Appeals has laid out the standard for state immunity from vicarious liability as follows:

> If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

Syl. Pt. 12, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014). In short, the State will be immune from vicarious liability if the correctional officers were

13

acting outside "the scope of their employment or duties." *Crawford*, 2023 WL 2729675, at *5. The factors used to determine whether an act is within the scope of employment include: "whether 'the conduct 1) is of the kind [the employee] is employed to perform; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the master, and 4) if force is used, the use of force is not unexpectable by the master.'" *Id.* at 7 (quoting *W. Virginia Reg'l Jail v. A.B.*, 766 S.E.2d 751, 769 (W. Va. 2014)). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* "[A]n employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within the general scope of his authority and for the benefit of the employer." *Id.* (quoting *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 431 (W. Va. 1998)).

The Defendant emphasizes this Court's prior opinions in *Marcum* and *Hamrick*, wherein this Court found that intentional conduct of correctional officers fell outside the scope of employment. *Marcum v. Baily*, No. 2:20-CV-00628, 2020 WL 7646977, at *5 (S.D. W. Va. Dec. 23, 2020) (Berger, J.); *Hamrick v. W. Virginia Div. of Corr. and Rehab.*, No. 2:24-CV-00728, 2025 WL 781089, at *4 (S.D. W. Va. Mar. 11, 2025). This Court in *Marcum* found that "the retaliatory use of OC spray could in no way serve the purposes of the WVDOC," and therefore was outside the scope of employment. *Marcum*, 2020 WL 6747977, at *5. In *Hamrick*, this Court found that although the alleged tasing of an inmate occurred during the time and place of employment and tasing was among a correctional officer's duties, no reasonable inference could be drawn that an officer's alleged use of a taser against an inmate who was not a threat "was done in the interest or

14

for the benefit of his employer," and therefore was outside the scope of employment. *Hamrick*, 2025 WL 781089, at *4. Defendant WVDCR argues the intentional conduct of the Defendant correctional officers should result in the same finding. The Plaintiff emphasizes the West Virginia's Supreme Court's opinion in *Crawford* finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where the plaintiff alleged unjustified use of O.C. spray, failure to properly decontaminate, and extended use of a restraint chair. *Crawford*, 2023 WL 2729675, at *7.

As previously discussed, the Plaintiff alleged that the Defendants beat and kicked him, and that Defendant Toppings sprayed him with OC spray in both the face and genitals, although he was not resisting and was not a threat. The Plaintiff also alleged that the Defendants failed to decontaminate him for several days. Further, the Plaintiff alleged that he awoke to Defendant Costello hitting him in the face, telling him that nothing was wrong with him, after he requested assistance due to not being properly decontaminated. None of this alleged conduct can be perceived as serving the purposes of or benefiting Defendant WVDCR, but rather, as retaliation for perceived disrespect and for requesting assistance.

These alleged facts are more in line with those found in *Hamrick*. Like the inmate in *Hamrick* who, after being ordered to stand next to a gate, was tased without warning when he leaned against a wall, even though he was not a threat, the Plaintiff here alleged that although he was not a threat, he was sprayed with OC spray without warning and beaten after trying to explain why he was unable to remove his pants. While the Plaintiff suggests that this Court rely on *Crawford*, where the West Virginia Supreme Court found that the West Virginia Regional Jail and Correctional Facility Authority (WVRJCFA) could be held vicariously liable for the actions of its

15

correctional officers because a jury could find that the subject officer used excessive force and acted within the scope of his employment, the alleged facts do not permit this Court to draw such an inference here. In contrast with *Crawford*, where there was evidence that the plaintiff was on drugs, explicitly and repeatedly refused to comply with an order to go into a holding cell, and could be viewed as a potential security risk, the Plaintiff here has alleged that he was not resisting and was not a threat during the course of the alleged conduct. And although, based on the facts alleged, the Plaintiff did not remove his pants as directed, he alleges that he was unable to do so because he was shackled. Toppings yelling at the Plaintiff and spraying him without warning while the Plaintiff was trying to provide an explanation, together with the subsequent beating and sprayings, indicate the officers' intent to retaliate against or punish the Plaintiff.

Assuming the allegations to be true, no reasonable inference can be drawn that the Defendant correctional officers' intentional wrongful conduct was done to serve the purposes of or to benefit their employer.[2] While the alleged conduct occurred during the authorized time and space, there is no factual basis that would support a reasonable inference that the force employed by the Defendant correctional officers was for the purpose of furthering Defendant WVDCR's lawful interests. Based on these allegations, the Defendant correctional officers engaged in intentional conduct outside the scope of their employment. Therefore, Defendant West Virginia Division of Corrections and Rehabilitation's motion to dismiss must be granted.

---

2 The Court makes this finding using WVDCR's *lawful* purposes. If, however, this Defendant is aware of repeated use of excessive force by its officers and condones it, either by its policies or its actions, or is simply quietly complicit, one should question if determining whether an officer's conduct serves WVDCR's "purposes" is the appropriate barometer.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Correctional Officer Devon Toppings' Motion to Dismiss Plaintiff's Complaint* (Document 4) and *Defendants Timothy Tibbs, Michael Costello, and Correctional Officer David McBrayer's Motion to Dismiss* (Document 8) be **DENIED**.  The Court further **ORDERS** that *Defendant West Virginia Division of Corrections and Rehabilitation's Motion to Dismiss Plaintiff's Complaint* (Document 6) be **GRANTED** and that Defendant West Virginia Division of Corrections and Rehabilitation be **DISMISSED** from this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:　　October 24, 2025

*/s/ Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA